# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEWAYNE G. HENDERSON,<br><br>　　Plaintiff,<br><br>　　v.<br><br>THE MAY DEPARTMENT STORES<br>COMPANY and AFTER HOURS<br>FORMALWEAR,<br><br>　　Defendant. | No. 06 C 1933<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

This summary judgment is unusual because Defendants primarily base it upon the premise that Plaintiff's sworn testimony demonstrates that he cannot sustain his claim of employment discrimination. The reason for this approach is that Plaintiff took no depositions from any potential witnesses (despite Plaintiff's knowledge of the names) and offers no documentary evidence to support his claim. This means that the very few things that Plaintiff heard from others that might support his claim are inadmissible and may not be relied upon to resist summary judgment. *See Stimett v. Iron Work Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

Defendants concede, as they must, that Plaintiff believed and perceived that his experiences while employed as a store manager were affected, in a legally significant sense, by his race and his employer's desire to retaliate against him for various EEOC complaints that he filed. However, Defendants claim that Plaintiff has no admissible evidence of a single act by his employer on which he could rationally base these conclusion of discrimination and retaliation.

Plaintiff's first contention—that Defendants terminated him—serves as a prime example of the record before me. Plaintiff was present at his performance review on April 5, 2007. The review apparently identified shortcomings that his employers saw in his work. Plaintiff requested that a witness be present at the review; management refused this request. Plaintiff did not like the tone or tenor of the review. This is not surprising. Plaintiff testified about the sequence of events that took place at his review this way:

> A. . . . I was terminated.
>
> Q. Actually, you left the key on the table and walked out of your April 5, 2007 evaluation, correct?
>
> A. Yes.
>
> Q. You walked out of that meeting, correct?
>
> A. I didn't crawl out of the meeting. I walked out technically, yes.
>
> Q. And that was the last time you were employed with After Hours, correct?
>
> A. Yes.
>
> Q. In fact . . . wasn't [sic] Reiter's last words to you don't resign? . . .
>
> A. Yes, but I never said I was resigning.
>
> Q. My question was the last thing Reiter said . . . was don't resign, correct?
>
> A. Yes.

Plaintiff offered no significant change to this verison. A few pages later, "don't resign" became "don't quit" and, accordingly, Plaintiff answered that he never said "I quit."

Plaintiff does say that he saw the event as a discharge, and it is undisputed that he did not subsequently show up for work. There is no evidence, however—from anyone else or in

2

documents—to support his subjective belief that he was terminated. Plaintiff's own perception that he was fired cannot be accepted, by a reasonable finder of fact, as a basis to conclude that he was, in fact, terminated. There is no evidence that he sought to confirm with the employer that he was fired. Subjective beliefs unsupported by evidence are not enough to force a defendant to trial.[1] *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). So, Plaintiff cannot prove the crucial element of being terminated from employment.

Defendants move for summary judgment on specific and general grounds. The specific challenges to the claims are not contested. These are:

1) Plaintiff's failure-to-promote claim fails because:
    a) There is no proof that Plaintiff was the more qualified candidate, and
    b) Plaintiff's employer was a company other than the two he sued here.

2) Plaintiff's retaliatory discipline claim fails because Plaintiff conceded that he violated company policy and that he suffered no adverse consequences.

3) The "comic claim" is time barred.

The majority of facts in this motion for summary judgment are conceded.[2] The facts which are denied are denied, in some cases, on trivial grounds. For instance, while Defendants say Plaintiff resigned, Plaintiff denies this. Nevertheless, Plaintiff admits in his deposition that he was offered an opportunity to write comments on his performance review, which he refused, and that he then stood up and walked out. Defendants regarded this as a resignation. Plaintiff

---

[1] It is clear that discrimination is the default explanation for all adverse experience with employers. E.g. When a supervisor could not tell Plaintiff what Plaintiff was doing wrong, he concluded "it left me to think it was race."

[2] Plaintiff concedes Defendants' statement of material facts Nos. 1-4, 6-9, 11-12 (except 3rd sentence), 13, 15-16, 21, 24, 26-27, 30, 32, 35, 37-38, 42, 44, 46, 49-51, 54-55, 57-62, 64, 67-76, 78.

denies that he was offered and declined a promotion. In his deposition, however, he said he didn't recall "one way or the other," which is not a denial. Plaintiff denies that he did not know the qualifications of someone who was selected over him for district manager, but this too is inconsistent with his deposition. All of these denials are stricken and the facts deemed admitted. In fact, Plaintiff did little to support any of his denials and has done virtually nothing to resist summary judgment in any respect.

Plaintiff's opposition to the motion is founded essentially on his belief that race and retaliation were the sole (or a meaningful) factor in everything that Corey McNeely, Jeff Webb, Arnie Capitinelli, Jeff Reubelt and Dave Reiter did with him during his employment. Plaintiff never offered a basis for his belief, except that he claimed that Reiter was sometimes condescending and standoffish.

His deposition testimony was founded, in significant part, on a one-page distillation of five to ten pages of contemporaneous notes of the events. These notes were not produced.

Based on Plaintiff's deposition, there are adequate grounds for believing that Defendants' criticisms of Plaintiff were based on his job performance rather than on his race. Plaintiff supervised the employees and accepted that he was responsible for every action of his employees "except for people make mistakes." (Henderson Dep. Vol I: 81-82)

The sum of Plaintiff's explicit evidence of race discrimination (outside of his own mental state) was the perceptions of one employee who "took [a remark to refer] to race" though racial words were not used, and another employee who "perceived" events to be racial but never herself complained of discrimination.

Plaintiff, in his deposition, relied on 1) notes and a memo he does not produce, 2) his own purely subjective perceptions that race and retaliation were the cause of his employment difficulties, 3) hearsay from two other employees about their subjective impressions, 4) speculation about how well white employees were doing their jobs compared to him. Moreover, all of this comes in the face of his own admissions that there were reasons for his employers' dissatisfaction with his performance. If one excludes the inadmissible evidence, there is no direct evidence of racial discrimination or retaliation. Nor is there any evidence to suggest that a similarly situated white employee was treated better. A reasonable finder of fact could not decide for Plaintiff.[3]

Defendants' motion for summary judgment is granted.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: July 30, 2008

---

[3] Plaintiff took no depositions. Perhaps some of what now constitutes hearsay might have ceased to be hearsay, but counsel's judgment may have been influenced by the content and tone of Plaintiff's deposition. Defendant's summary judgment motion does not rely on affidavits or deposition of Defendants' employees. Defendants, like Plaintiff's counsel, believed the case rose or fell on documents and Plaintiff's testimony. Plaintiff's Rule 56 statement says it consists of "facts from Plaintiff's two deposition sessions." Whatever the reasoning involved, both sides have "put up" what they wanted to put up.